# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BURLEY A. SANDERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )   Civ. Action No. 14-0829 (ESH) |
| METROPOLITAN POLICE | ) |
| DEPARTMENT,[1] | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## <u>MEMORANDUM OPINION</u>

In August 2010, plaintiff was convicted of simple assault following a bench trial in the

Superior Court of the District of Columbia.  (*See United States v. Sanders*, 2010 CMD 006551

(D.C. Super. Ct. Aug. 23, 2010.)  The misdemeanor conviction resulted from an encounter

between plaintiff, then a lieutenant in the District of Columbia Metropolitan Police Department

("MPD"), and a female sergeant, both of whom were assigned to MPD's Fifth District.

Following internal proceedings, MPD fired plaintiff on July 1, 2011, after 23 years of

employment. (*See* Compl. at 1.)  Plaintiff filed this lawsuit in May 2014 upon learning "that the

District of Columbia EEOC had adopted [MPD's] findings in relation to the termination[.]" (*Id.*

at 1.)

Pending is the District of Columbia's Motion to Dismiss or in the Alternative Motion for

Summary Judgment (ECF No. 9.)  Because plaintiff has not successfully rebutted MPD's

---

[1]   Since the Metropolitan Police Department cannot be sued in its own name, *see McRae v. Olive*, 368 F. Supp. 2d 91, 94 (D.D.C. 2005), the District of Columbia is hereby substituted as the proper defendant.

legitimate non-discriminatory reasons for his termination, the Court will grant summary

judgment to the District on the federal claim and enter judgment accordingly.[2]

## BACKGROUND

The undisputed facts are as follows.  On February 1, 2011, in response to plaintiff's

simple assault conviction, defendant served plaintiff with a notice of proposal to terminate his

employment.  On April 7, 2011, plaintiff appeared with counsel for a hearing before the

Department's Adverse Action Panel and pled guilty to four charges.  Three of the charges related

directly to plaintiff's arrest and conviction, including his "providing questionable testimony"

during his bench trial.  A fourth charge alleged that plaintiff had provided "a false account of

events involving the female subordinate" during the Department's investigation.  (Decl. of

Michael I. Eldridge ¶¶ 7-8, ECF No. 9-3.)  The Panel "unanimously determined" that plaintiff

was guilty of the charges and "further determined that [he had] exercised poor judgment as a

supervisor and manager."  (*Id*. ¶¶ 9-10.)  The Panel also found that due to "the seriousness of the

crime, which was compounded by [plaintiff's] false statements to the Court, there would be a

significant risk to the Department to allow [him] to have contact with MPD members."  (*Id*. ¶

11.)  Consequently, the Panel concluded that plaintiff "could not be rehabilitated and termination

was the appropriate penalty."  (*Id*. ¶ 12.)

In his appeal to the Chief of Police, plaintiff argued that officers convicted of drunk

driving offenses were "given stiff suspensions, but permitted to retain their positions."  (*Id*. ¶ 14.)

In affirming the termination decision in June 2011, the Chief of Police found such convictions

"not equivalent" to the sexual assault charges lodged against plaintiff and the ensuing conviction

---

[2]     Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over any common law claims or claims arising under District of Columbia law.

"of a crime which was also an incident of sexual harassment that involved physical touching[.]" (*Id.* ¶ 15.)  The Chief further determined that as a lieutenant, plaintiff was "considered an 'official' of the Department . . . held to a higher level of conduct than rank-and-file members," such as "the victim of Sanders' assault."  (*Id.* ¶¶ 16-17.)

On January 22, 2013, The District of Columbia Office of Human Rights ("OHR") issued a Letter of Determination finding after an investigation that there was "no probable cause to believe [MPD] subjected [plaintiff] to discrimination based on his race . . . when [MPD] allegedly terminated [plaintiff's] employment and did not terminate a [white] employee for similar violations of [MPD's] policies."  (Def.'s Ex. C, ECF No. 9-3.)

## ANALYSIS

## I.  LEGAL STANDARD

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  "An issue is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.' "  *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson*, 477 U.S. at 248).  In determining whether a genuine issue of material fact exists, a court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009) (quoting *McCready v. Nicholson*, 465 F.3d 1, 7 (D.C. Cir. 2006)).  Plaintiff's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

## II.  LEGAL FRAMEWORK

Although the complaint does not specifically state a basis for federal court jurisdiction, the Court accepts from plaintiff's references to EEOC proceedings, his allegations of unequal treatment in comparison with white officers, and the OHR documents defendant has supplied that he, a black man, is proceeding under Title VII of the Civil Rights Act, which proscribes employment discrimination on the basis of race.  *See* 42 U.S.C. § 2000e-2(a); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (requiring liberal construction of *pro se* filings); *Richardson v. U.S.*, 193 F.3d 545, 548 (D.C. Cir. 1999) (absent any indication of prejudice to the defendant, a court should read "all of the plaintiff's [*pro se*] filings together").

In the absence of direct evidence of discrimination, as here, Title VII claims are assessed under a burden-shifting framework set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).  Pursuant to that framework, a plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  A plaintiff must show that (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007).  Once a plaintiff has made a prima facie case, "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the [challenged employment action].' "  *Tex. Dep't of Cmty. Affairs*, 450 U.S. at 253 (quoting *McDonnell Douglas*, 411 U.S. at 802).  Once an employer satisfies its burden, the *McDonnell Douglas* burden-shifting framework disappears, and a court must simply determine whether the plaintiff has put forward enough evidence to defeat the proffer and support a finding of discrimination.

*Woodruff v. Peters*, 482 F.3d 521, 530 (D.C. Cir. 2007); *see also Brady v. Off. of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) ("[W]here an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not-*and should not*-decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*." ) (emphasis in original).  Instead, when deciding the employer's motion for summary judgment, the district court "must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race . . . .?" *Id.*

Pretext of discrimination may be established by showing either "that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs*, 450 U.S. at 256.  Courts, however, "may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.' " *Fischbach v. District of Columbia Dep't of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting *Milton v. Weinberger*, 696 F. 2d 94, 100 (D.C. Cir. 1982)).

## III.  DEFENDANT'S REASONS FOR PLAINTIFF'S TERMINATION

Plaintiff does not seriously dispute that he was terminated for legitimate, non-discriminatory reasons.  Indeed, he admits that he "could not reasonably have pleaded innocent to being arrested, being convicted of a crime or negatively affecting the reputation of the agency."  (Pl.'s Opp'n at 1, ECF No. 14.)  Plaintiff argues instead that while he "may be the only official convicted of assaulting a subordinate . . ., [he] would not be the only member of the MPDC with a misdemeanor criminal conviction."  (*Id*. at 2.)   Thus, the question becomes whether plaintiff has offered sufficient rebuttal evidence to overcome defendant's explanation.

Considering plaintiff's comparisons as an attempt to support pretext (*see* Compl. at 1-2) (listing four examples), the Court must conclude that they are insufficient for a reasonable jury to find or infer discrimination.  Defendant disputes plaintiff's comparisons and argues that the white officers who committed assaults and were disciplined but not terminated were not comparable to plaintiff.  (*See* Def.'s Mem. of P. & A. at 7-8.)  The record supports this argument.

Plaintiff contends that like the white officers, his conduct amounted to simple assault. Specifically, plaintiff alleges that he was convicted of simple assault "for grabbing the victim's arm," as opposed to a crime with "sexual overtones."  (Compl. at 1.)   But defendant has produced portions of the transcript of plaintiff's trial that directly contradict plaintiff's characterization of the offending conduct.  (*See* Def.'s Facts ¶¶ 4-5) (Court finding "contact between [plaintiff's] groin and [the victim's] buttocks"  satisfied "unwelcome touching" element of simple assault charge, that "sexual contact" had "certainly" occurred, but that evidence on specific intent was insufficient to convict on misdemeanor sexual assault charge).  Furthermore, the Director of the Disciplinary Review Board avers that he reviewed the Board's files for the previous five years and had "not found any other instance where an official has been convicted of assaulting a rank-and-file officer."  (Eldridge Decl. ¶ 18.)

In addition, plaintiff admits that only one of the alleged incidents resulted in an arrest and conviction, thereby rendering the other incidents incomparable. (*See* Compl. at 2.)  Plaintiff identifies a white officer who was convicted in Superior Court for assaulting "two Ethiopian citizens over a parking issue."  (*Id.*)  Plaintiff alleges that the officer received "a mere 30 day suspension" because he was "deemed as being able to be rehabilitated."  (*Id.*)  The OHR determination reveals that the white officer was convicted of one count of simple assault and one count of fleeing from the police.  (Def.'s Ex. C at ECF p.14).  Unlike plaintiff, the officer was a

"non-supervisor/manager" and was "off-duty and intoxicated when he was involved in an altercation with two citizens." (*Id*.) Like plaintiff, the officer was served with notice of a proposal to terminate his employment but the Adverse Action Panel "determined that [the officer] was under the influence of alcohol and therefore subject to rehabilitation." (*Id*. at 15). The Panel's decision about the white officer's conduct appears consistent with MPD policy as evidenced by the Chief of Police's response to plaintiff's claim of unequal treatment. According to the OHR determination, the Chief of Police "indicated that the Department approaches convictions for DUI or DWI differently, since in many instances, the member may be an alcoholic. Alcoholism is recognized as a disease which requires treatment[,] [whereas] violation of EEO laws such as the incident of sexual harassment involving physical touching in the first offense penalty [sic] can result in termination." (*Id*. at 14.)

The Court finds that no reasonable jury could find for plaintiff on the overwhelming evidence differentiating his circumstances from those of the convicted white officer. *See Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999) ("A plaintiff must [] demonstrate that all of the relevant aspects of [the] employment situation were nearly identical" and that he and the alleged similarly situated employee "were charged with offenses of comparable seriousness.") (citations and internal quotation marks omitted). Nor, upon considering plaintiff's contradictory statements, could a reasonable jury find defendant's explanation for terminating plaintiff "unworthy of credence" or tainted by racial animus. *Tex. Dep't of Cmty. Affairs*, 450 U.S. at 256.

## CONCLUSION

For the reasons stated above, the Court concludes that the District of Columbia is entitled to judgment as a matter of law on plaintiff's Title VII claim and declines to exercise

supplemental jurisdiction over any non-federal claims.  A separate Order accompanies this

Memorandum Opinion.

/s/    *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

Date:   February 10, 2015